UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OYD COLLINS McCRAY,

         Petitioner,

v.                                    CASE NO. 03-CV-73490-DT
                                            HONORABLE ARTHUR J. TARNOW

DOUGLAS VASBINDER,

         Respondent.
_____/

**OPINION AND ORDER GRANTING THE WRIT OF HABEAS CORPUS**

Petitioner Oyd Collins McCray has filed an application for the writ of habeas corpus

under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's murder and felony firearm

convictions.

Petitioner was deprived of effective assistance of counsel by trial counsel's failure to

investigate and call additional defense witnesses. Accordingly, the writ of habeas corpus is

granted unless the State provides a new trial free from constitutional error within ninety days.

**I.  Background**

**A.  State Court Proceedings**

**1.  Trial**

Petitioner was convicted on August 16, 1994, of first-degree murder, MICH. COMP. LAWS

§ 750.316, and possession of a firearm during the commission of a felony (felony firearm),

MICH. COMP. LAWS § 750.227b. The convictions arose from the fatal shooting of Perry

(Tommy) Leonard on Bessemore Street in Detroit, Michigan on February 28, 1994, at about 5:00

p.m. Mr. Leonard was seated in a Chevy Suburban truck when he was shot.

*McCray v. Vasbinder,* No. 03-73490

Eric Perrin testified that he was driving down Bessemore Street when he saw a Chevy Suburban parked in the middle of the street. A man was standing next to the Suburban and conversing with the driver. A car pulled up and a man got out of the car. The man looked at the person seated inside the Suburban and appeared to gesture. The man who had been conversing with the driver of the Suburban then pulled a handgun from his pocket, stuck his hand inside the window of the Suburban, and started shooting at Tommy Leonard. The Suburban moved forward, veered to the left, jumped a curb, and crashed into a house. The shooter continued to fire the handgun as he ran alongside the vehicle. After the vehicle crashed, the shooter walked back to the car that had pulled up and got in the car. Perrin identified Petitioner at a lineup and at trial as the shooter.

Dartrell Effinger testified that he pulled up to the Chevy Suburban in his blue Chevy Malibu. He knew Petitioner and saw him talking to the driver of the Suburban. Effinger got out of his car and greeted the driver of the Suburban. Effinger subsequently heard gunshots and noticed that Petitioner's right hand was inside the window where Tommy was seated. Effinger denied seeing Petitioner with a gun.

Effinger testified on cross-examination that Petitioner normally wore a mustache.[1] Effinger did not think that the person he saw standing by the truck had a mustache, and he admitted that, about a month after the shooting, he may have told defense counsel that it could have been Petitioner's brother, Stacy McCray, standing by the Suburban. Effinger claimed that

---

[1] A police officer testified that Petitioner was wearing a goatee when he was arrested on March 2, 1994. The shooting occurred on February 28, 1994.

*McCray v. Vasbinder,* No. 03-73490

he gave a statement to the police after the police told him that he could go home if he made a statement.

Dr. Sawait Kanluen testified that Tommy Leonard died from multiple gunshot wounds and that there was no evidence of close range firing. Although several spent bullets and fired cartridge casings were collected in and around the Chevy Suburban, no murder weapon was recovered and no fingerprints were found on the Chevy Suburban.

Petitioner presented two witnesses in his defense: Herbert Sanders, the attorney who attended the lineup to ensure its fairness, and Evelyn Ross, who lived near the site of the shooting. Mr. Sanders testified that Eric Perrin eventually identified Petitioner at the lineup. Ms. Ross testified that, at about 5:00 p.m. on February 28, 1994, a car hit her house. She saw no other car in the middle of the street.

Defense counsel argued to the jury that there were discrepancies between Eric Perrin's testimony and Dartrell Effinger's testimony and that, if Effinger were telling the truth, Perrin must have been lying. Defense counsel also emphasized that Dartrell Effinger had told defense counsel after the shooting that he was not sure who the shooter was and that it could have Petitioner's brother or someone else.

The jurors deliberated the case about one hour and then convicted Petitioner, as charged, of first-degree murder and felony firearm. Petitioner was sentenced to two years in prison for the felony firearm conviction and to life imprisonment for the murder.

*McCray v. Vasbinder,* No. 03-73490

## 2.  Direct Appeal

Petitioner appealed his convictions through counsel.  He alleged, among other things, that his trial attorney failed to investigate or contact possible defense witnesses.  The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* decision, *see People v. McCray*, No. 181017 (Mich. Ct. App. June 25, 1996), and on May 30, 1997, the Michigan Supreme Court denied leave to appeal.  *See People v. McCray*, 454 Mich. 914; 564 N.W.2d 897 (1997) (table).  The United States Supreme Court denied Petitioner's application for a writ of certiorari on October 6, 1997.  *See McCray v. Michigan*, 522 U.S. 888 (1997).

## 3.  State Collateral Appeal

On October 6, 1999, Petitioner filed a motion for relief from judgment under subchapter 6.500 of the Michigan Court Rules.  He alleged that:  (1) his trial attorney (a) failed to inform him of his right to testify, (b) failed to investigate or subpoena several witnesses, and (c) informed the jury that they could find him guilty; (2) the trial judge denied him a fair trial by berating, scolding, and demeaning defense counsel during cross-examination of prosecution witnesses; and (3) appellate counsel failed to properly argue that trial counsel rendered ineffective assistance.  The trial court denied Petitioner's motion on the basis that Petitioner did not show "good cause" for failing to raise his claims on appeal and "actual prejudice from the alleged irregularities," as required by Michigan Court Rule 6.508(D).  The Michigan Court of Appeals denied leave to appeal the trial court's decision, because Petitioner failed to establish entitlement to relief under Rule 6.508(D).  *See People v. McCray*, No. 229804 (Mich. Ct. App.

*McCray v. Vasbinder,* No. 03-73490

Apr. 26, 2001).  On November 30, 2001, the Michigan Supreme Court denied leave to appeal for

the same reason.  *See People v. McCray*, 465 Mich. 914; 636 N.W.2d 527 (2001) (table).

On January 30, 2001, Petitioner filed a second motion for relief from judgment.  He

claimed to have newly discovered evidence of actual innocence.  The trial court denied his

motion because, in its opinion, Petitioner had not provided sufficient evidence to persuade the

Court to waive the "good cause" requirement of Rule 6.508(D).

On appeal from the trial court's decision, Petitioner alleged that he had new evidence of

actual innocence and that the trial court had failed to review the substance of his claim.  The

Michigan Court of Appeals dismissed the appeal for lack of jurisdiction, because Petitioner

applied for leave to appeal more than twelve months after the trial court issued its decision.  The

court of appeals stated that, even if the appeal had been timely, the court would lack jurisdiction

because the appeal stemmed from Petitioner's second motion for relief from judgment.[2]  *See*

*People v. McCray*, No. 243197 (Mich. Ct. App. Sept. 4, 2002).  Petitioner did not appeal the

appellate court's decision to the Michigan Supreme Court.

### B.  Federal Court Proceedings

Petitioner signed and dated his *pro se* habeas corpus petition on August 27, 2003.

Respondent moved to dismiss the petition on the ground that Petitioner had not complied with

the statute of limitations.  The Court appointed an attorney for Petitioner and, on March 22,

2005, the Court held an evidentiary hearing on whether the statute of limitations should be tolled

---

[2]  Michigan Court Rule 6.502(G) permits defendants to file only one motion for
relief from judgment after August 1, 1995, unless the motion is based on a retroactive
change in the law or a claim of new evidence.

*McCray v. Vasbinder,* No. 03-73490

on the basis of Petitioner's claim of actual innocence. The testimony at that hearing has been

summarized in an earlier order. *See* Doc. #36, Apr. 14, 2005. The Court concluded that

Petitioner had made a colorable showing of actual innocence, which was sufficient to overcome

Petitioner's failure to comply with the statute of limitations.

On February 13, 2006, the Court held an evidentiary hearing on Petitioner's claim that

his trial attorney was ineffective. Petitioner's mother and sister testified that they provided

Petitioner's trial attorney with the names of witnesses, but the attorney never spoke with the

witnesses. Following the hearing, the parties filed supplemental briefs.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes the

following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

6

*McCray v. Vasbinder,* No. 03-73490

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable." *Id.* at 411.

### III.  Discussion

#### A.  Defense Counsel and the Failure to Investigate

Petitioner alleges that his trial attorney failed to investigate or subpoena three witnesses

that Petitioner mentioned to the attorney.  Petitioner contends that the witnesses would have

provided valuable testimony that they did not see Petitioner on Bessemore Street at the time of

the shooting.

The Michigan Court of Appeals adjudicated this claim on the merits as follows:

> [D]efendant alleges that his trial counsel failed to interview several possible
> defense witnesses.  However, the failure to interview witnesses does not establish
> ineffective assistance of counsel absent a showing that the failure to interview
> resulted in the loss of valuable evidence which would substantially benefit the
> accused. *People v. Caballero,* 184 Mich. App. 636, 642; 423 N.W.2d 275 (1990).
> Defendant did not produce any evidence from the lower court file or trial record
> which establishes that his trial counsel failed to interview witnesses or that the
> testimony of those witnesses would have yielded valuable evidence which would
> have benefited defendant.

7

*McCray v. Vasbinder,* No. 03-73490

*McCray*, No. 181017, at 3. The court of appeals concluded that, because nothing in the trial court record supported Petitioner's allegations concerning counsel's performance, there was no basis for Petitioner's claim of ineffective assistance of counsel.

### 1. Legal Framework

### a. *Strickland v. Washington*

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for the purpose of evaluating ineffective-assistance-of-counsel claims. *Williams v. Taylor*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The prejudice prong of the Strickland test requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Of course, a 'reasonable probability' does not mean a certainty, or even a preponderant likelihood of a different outcome, nor, even more, that no rational juror could constitutionally find [the petitioner] guilty." *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (internal citation omitted). In other words, the prejudice inquiry "*is not the same as the sufficiency of the evidence analysis . . . .*" *Richey v. Mitchell*, 395 F.3d 660, 687 (6th Cir.) (emphasis added), *overruled on other grounds sub nom Bradshaw v. Richey*, __ U.S. __, 126 S. Ct. 602 (2005). The Court need *not* find "that a reasonable jury could not have reached the same

*McCray v. Vasbinder,* No. 03-73490

verdict if counsel had performed effectively," *Johnson v. Scott*, 68 F.3d 106, 109 n.4 (5th Cir.

1995), or that Petitioner "could not have been convicted." *Foster v. Lockhart*, 9 F.3d 722, 726

(8th Cir. 1993).  The question is whether the evidence which was not revealed, "taken as a

whole, might well have influenced the jury's appraisal of [Petitioner's] culpability" and whether

"the likelihood of a different result if the evidence had gone in is sufficient to undermine

confidence in the outcome actually reached . . . ." *Rompilla v. Beard*, 543 U.S. 374, __, 125 S.

Ct. 2456, 2469 (2005) (internal citations and quotation marks omitted).

### b.  Duty to Investigate

*Strickland* requires counsel "to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

"American Bar Association standards, which provide guidance as to what constitutes

'reasonable' professional conduct, also mandate counsel's duty to investigate all leads relevant

to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (citing ABA

Standards for Criminal Justice 4-4.1, 4.54-4.55 (1980)) (internal citations omitted).

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off-

chance something will turn up . . . ." *Rompilla,* 125 S. Ct. at 2463.  Attorneys do, however, have

a duty to make all reasonable efforts to learn what they can about a case. *See id*. at 2465.

"This duty includes the obligation to investigate all witnesses who may have information

concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir.

2005).  "A purportedly strategic decision is not objectively reasonable 'when the attorney has

failed to investigate his options and make a reasonable choice between them.'" *Id.* (quoting

*McCray v. Vasbinder,* No. 03-73490

*Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)).   Stated differently, "[i]t is not reasonable

to refuse to investigate when the investigator does not know the relevant facts the investigation

will uncover." *Dickerson v. Bagley*, 453 F.3d 690, 696 (6th Cir. 2006).  Inattention or

negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins v. Smith*, 539

U.S. 510, 526 (2003); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To demonstrate deficient performance or prejudice resulting from a failure to investigate,

a petitioner must "make some showing of what evidence counsel should have pursued and how

such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748  (6th Cir. 2002).

"[T]here is no need to show that the evidence that might have been discovered would have been

helpful -- only that a proper judgment could not be made without the investigation when the

failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell*, 454 F.3d 564,

588 (6th Cir. 2006) (Boggs, C. J., concurring).

## 2.  The Potential Witnesses

Petitioner alleges in an affidavit dated May 22, 1995, that he informed his trial attorney

of three potential defense witnesses, who would have testified favorably for him at trial.  Defense

counsel failed to produce the witnesses at trial, and Petitioner alleges that, to the best of his

knowledge, his attorney never spoke to the witnesses, nor contacted them.

*McCray v. Vasbinder,* No. 03-73490

The witnesses in question here are Derrick Ross, Ferrie Rice, Stacy McCray.[3]  Based on these witnesses' affidavits or testimony at the evidentiary hearing, the Court believes they would have testified as follows:  Derrick Ross would have said that a truck crashed into his house on Bessemore Street and that Petitioner was not the man he saw running away from the truck.

Petitioner's aunt, Ferrie Rice, would have testified that she was in her home on Bessemore Street when she heard gunshots.  She looked out her window and saw Anthony Jones running toward Dartrell Effinger.  She did not see Petitioner, but she did see Petitioner's brother and some other men standing on the other side of the street.

Petitioner's brother, Stacy McCray, would have testified that he was shooting dice on Bessemore Street when Tony Jones approached the driver's side of Tommy Leonard's truck. After "Trell" moved his car to the side of the truck, Stacy heard gunshots, and he saw Tony get in "Trell's" car.  According to Stacy, Petitioner was not present when this incident occurred. Stacy testified at the evidentiary hearing that he informed Petitioner's trial attorney that Petitioner was not present at the shooting.

---

[3] At the Court's evidentiary hearing on February 13, 2006, Petitioner's mother and sister testified that they provided Petitioner's trial attorney with the names of several other defense witnesses and that the attorney never spoke with the witnesses.  The potential witnesses mentioned by Petitioner's mother and sister at the evidentiary hearing were not listed in Petitioner's state appellate brief.  Consequently, Petitioner has chosen to confine his allegation of ineffective assistance of counsel to the issue of defense counsel's failure to call Derrick Ross, Ferrie Rice, and Stacy McCray as witnesses.

*McCray v. Vasbinder,* No. 03-73490

### 3.  Analysis

The testimony of Derrick Ross, Ferrie Rice, and Stacy McCray would have provided invaluable evidence that Petitioner did not shoot Tommy Leonard.  The testimony would not have been merely cumulative evidence.  Rather, the testimony would have differed "'in a substantial way -- in strength and subject matter -- fr om the evidence actually presented'" at trial.  *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006) (quoting *Clark v. Mitchell*, 425 F.3d 270, 286 (6th Cir. 2005)).

Derrick Ross, Ferrie Rice, and Stacy McCray might have been able to convince the jurors that Eric Perrin's and Dartrell Effinger's eyewitness testimony was weak and unreliable.[4] Counsel's failure to contact Derrick Ross, Ferrie Rice, and Stacey McCray no doubt "resulted from inattention, not reasoned strategic judgment," *Wiggins v. Smith*, 539 U.S. at 526, because there was no reasonable strategic reason not to contact these witnesses.  Their testimony would have been consistent with the defense of mistaken identity and would have given the defense some substance.  The weaknesses in Eric Perrin's and Dartrell Effinger's eyewitness testimony and the lack of physical evidence linking Petitioner to the crime should have convinced defense counsel of the need to investigate the witnesses that Petitioner and his family mentioned to him.  "Counsel's failure to follow these promising leads leaves no 'room for debate' that [the]

---

[4]  There were other reasons for concluding that Perrin's and Effinger's testimony was unreliable.  Perrin did not notice any facial hair on Petitioner, and he admitted that he may have said at the lineup that Petitioner *could* have been the shooter.  Dartrell Effinger's eyewitness identification was suspect because he admitted telling defense counsel that the person standing by the victim's truck may have been Petitioner's brother Stacy or someone else.

12

*McCray v. Vasbinder,* No. 03-73490

truncated investigation was deficient." *Harries v. Bell*, 417 F.3d 631, 639 (6th Cir. 2005).

Counsel could not possibly have evaluated or weighed the risks and benefits of calling the

witnesses without so much as asking them what they would say if called. *Towns v. Smith*, 395

F.3d at 260. Absent any contact with the witnesses, counsel was ill-equipped to assess the value

of their testimony. *Id.*

The Court's confidence in the outcome of the trial has been undermined by defense

counsel's failure to investigate and call Derrick Ross, Ferrie Rice, and Stacy McCray. Although

Petitioner was "not entitled to an attorney who will not leave the smallest stone unturned," the

stones that he did have, "should at least [have been] nudged." *Coleman v. Brown*, 802 F.2d

1227, 1234 (10th Cir. 1986) (quoted in *Bigelow v. Williams*, 367 F.3d 562, 573 (6th Cir. 2004)).

The state court's conclusion that defense counsel was not ineffective was objectively

unreasonable. Therefore, the writ of habeas corpus is granted on this issue.

**B. Appellate Counsel and the Remaining Claims**

Petitioner alleges that his appellate attorney on direct review was ineffective for failing to

make a proper argument about trial counsel by securing the affidavits of Derrick Ross, Ferrie

Rice, and Stacy McCray to support his claim about trial counsel. The Court agrees. However,

because the Court is granting Petitioner a new trial, it is unnecessary to analyze Petitioner's

claim about appellate counsel. Petitioner's remaining claims need not be addressed.

13

## IV.  Conclusion

The state court's rejection of Petitioner's claim about trial counsel resulted in a decision that was contrary to, or an unreasonable application of, *Strickland*.  Accordingly, the application for a writ of habeas corpus is GRANTED.  The State shall release Petitioner unless it retries him within ninety days of the date of this order.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  September 14, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 14, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary